# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEOPOLDO MACIAS, | ) | 1:09cv01510 OWW DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S SOCIAL |
| | ) | SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Leopoldo Macias ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and Social Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for Findings and Recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications for DIB and SSI on August 21, 2006. AR 129-33, 134-40. He alleged disability since January 1, 2006, due to mental illness. AR 173-74. After his

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 74-77, 81-86, 87. ALJ James P. Berry held a hearing on October 16, 2008, and issued an order denying benefits on December 31, 2008. AR 7-16, 19-57. On June 18, 2009, the Appeals Council denied review. AR 1-4.

Hearing Testimony

ALJ Berry held a hearing in Fresno, California, on October 16, 2008. Plaintiff attended the hearing with his attorney, Robert Ishikawa, and was assisted by an interpreter. Vocational expert ("VE") Stephen Davis also appeared and testified. AR 21-22.

Plaintiff was 56 years old at the time of the hearing. He cannot communicate very much in English. He completed the fourth grade in Mexico. He cannot read or write in English, but he can read and write in Spanish. AR 23-24.

Plaintiff last worked at Wendy's in 2005. While there, he prepared meat for hamburgers. Before Wendy's, Plaintiff worked at Foster Farms for 90 days cutting chicken breasts into fillets. In 1999, he worked for nine months as a carpenter's helper. From 1994 to 1998, he worked at Zacky Farms weighing and hanging turkeys. Prior to that, he was a yard worker at Countrywide Building Materials. He filled orders and used a fork lift. During those times, he also had a weekend job selling corn on the cob. AR 24-26.

Plaintiff receives treatment at Fresno County Mental Health. He hears voices and forgets what he is doing. When he was working, they were loud. They don't affect his concentration very much anymore, but his mind wanders. He would like to be able to work, but doesn't feel capable. He qualifies to obtain a job and then cannot fulfill it because the volume of the voices might go up. AR 27-29.

Plaintiff testified that he has no enemies. He also initially testified that he has no physical problems. He subsequently testified that he has problems with his hips since being hit in Mexico. He has pain in his lower back at the tailbone. AR 29.

Plaintiff said he last drank in April. Prior to that, he last drank in October or November, and then started taking some medications. He takes Seroquel from Fresno County Mental Health. AR 29-30.

Plaintiff testified that he lives in a house with his wife. She works and gets food stamps. Plaintiff does very little housework. He mostly prepares dinner. He does not vacuum, sweep, or mop. He washes his clothes. He does yard work and all the cleaning outside of the house. AR 30-31.

Although he has a car, he does not drive because he is afraid of causing an accident. He never had a driver's license, but used to drive all the time. He does not have any activities outside his home, but his wife will send him to pay a bill. He takes a bicycle or the bus. AR 31-32.

During the day, Plaintiff goes out. In the afternoon, he talks to the relatives that live in a room behind his house. In the evening, he watches TV for about a half an hour. He doesn't really walk. He rides his bike. He could walk about 20 minutes. He guessed that he could stand two to three hours in an eight-hour day. He could sit maybe one to two hours. He could lift a five-gallon bucket filled three quarters of the way with water. AR 33-34.

One of Plaintiff's medications makes him feel weak. He also feels tired and lies down about three times a day for an hour or two. He gets up in the morning at 6:30 or 7:00. He lies down three times between 7:00 and 2:00. He goes to bed at 9:30 or 10:00. AR 34-35.

When asked if there was anything else that he would like to tell the ALJ regarding his disability, Plaintiff asked why they "put that apparatus to watch over us with those voices." Plaintiff then testified that when he went to Mexico, he heard the same voices. They knew everything he did, where he was, where he staying, and what he was eating. AR 35.

In response to questions from the ALJ, Plaintiff testified that he went to "De Pateclande Morelos," about an hour out of Guadalajara, to take care of some business with his brother. His brother was keeping Plaintiff's money. Plaintiff went by himself to get it, but his brother would not give it back. AR 35-36.

In response to questions from Plaintiff's counsel, the VE testified about his education and qualifications. The VE explained that he has a MA in counseling psychology and a BA in psychology. He has a post master degree in clinical psychology and is board certified by the American Board of Vocational Experts. He does not have a degree in vocational counseling, but

is a board certified vocational expert. He is certified as a professional rehabilitation counselor at the state level. AR 36-39.

The VE asked questions about Plaintiff's past work. In the yard worker position, Plaintiff testified that he used to pick up about 94 pounds at the lumberyard. He drove the forklift almost all day for three years. It took him between one and two weeks to learn how to operate the manual forklift. If he did not understand what was written on the work orders, he would ask another worker. After a while, he could recognize what was written. If something new was ordered and written down, he would have to ask. AR 40-42.

In response to questions from the ALJ, the VE testified that Plaintiff's primary job was a meat packer, packager, 920-587-018, unskilled at two, classified at medium and performed at light. The other job as yard worker, lumberyard, 929.687-030, is classified as semiskilled at three, but Plaintiff performed it at two. It was unskilled, classified at heavy and performed at heavy. AR 42-43.

For the first hypothetical, the ALJ asked the VE to assume an individual 56 years of age, illiterate, with Plaintiff's past relevant work experience. The ALJ further asked the VE to assume that this individual has a combination of severe impairments and retains the residual functional capacity to lift and carry 100 pounds occasionally, 50 pounds frequently. The individual retains the ability to stand, walk and sit six hours each. The individual also retains the ability to perform simple repetitive tasks as well as maintain attention, concentration, persistence, and pace. The individual retains the ability to relate to and interact with others, to adapt to usual changes in work setting and to adhere to safety rules. With these limitations, the VE testified that this individual could not perform the yard worker job as Plaintiff performed it, but could perform it as defined in the Dictionary of Occupational Titles. The VE also testified that it would be unlikely that this individual could do the meat packager job because they have to stand the entire day. AR 43-44.

For the second hypothetical, the ALJ asked the VE to assume the same vocational parameters as the first hypothetical. The ALJ also asked the VE to assume an individual with a combination of severe impairments and a residual functional capacity to lift and carry

approximately 32 pounds or less, to stand two to three hours total, walk 20 minutes total and sit one to two hours. This individual also would have difficulty maintaining attention and concentration and difficulty remembering work processes. This individual would require rest periods lasting one to two hours approximately two or more times per day. Given these limitations, the VE testified that such an individual could not perform either of Plaintiff's past jobs or any other work in the national economy. AR 44.

For the third hypothetical, Plaintiff's attorney asked the VE to assume the same vocational background. Counsel also asked the VE to assume that this person was unable to relate and interact with coworkers, supervisors, and the general public, but could carry out one to two-step job instructions. The VE testified that this person could perform the yard work position with 25 percent erosion. AR 47. According to the VE, the DOT describes the involvement with people at a very insignificant level and there is no contact with the public. The VE eroded the job 25 percent because there will be times when he would come in contact with coworkers, supervisors or the public. The VE believed the job could be performed without contact. He also believed that jobs exist in the national economy where you don't have to interact with people. He will erode them because he cannot be sure there won't be some unexpected communication or contact. AR 47-50.

For the fourth hypothetical, Plaintiff's counsel asked the VE to assume the same vocational background. This person also would have moderate difficulties maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. The degrees of limitation are none, mild, moderate, marked and extreme. AR 50. The VE testified that the meat packer position had been ruled out. For the yard worker, there would be 50 percent erosion the way Plaintiff performed it and 75 percent erosion as classified at semiskilled. The VE further testified that to erode it further, there would need to be a production error of at least seven percent. The VE explained that a moderate impairment does not equate to error rate. If you have more than a seven percent error rate, then you are unemployable. It is not a direct correlation with moderate, because people function differently with a moderate level impairment. AR 51-55.

Medical Evidence[2]

On November 22, 2005, Plaintiff's treatment records reflect complaints of depression and auditory hallucinations. He was assessed with schizophrenia and referred to mental health. AR 204.

On April 12, 2006, Plaintiff sought treatment from Fresno County Mental Health. He reported that he was referred by the Mission Academy Program to be evaluated for his auditory hallucinations. AR 253-54.

On May 4, 2006, Frances Calderon, M.S.W at Fresno County Mental Health, completed an Adult Comprehensive Assessment. Plaintiff was on probation for domestic violence. He reported alcohol use of 10-12 beers. He denied current use. On mental status exam, he was preoccupied and paranoid. He thought someone was monitoring his brain and watching him constantly. He reported auditory hallucinations. Ms. Calderon diagnosed psychotic disorder NOS, alcohol abuse, a history of alcohol induced delusions and hallucinations, and rule out schizoaffective disorder. AR 247-51. A plan of care was developed for six months to include case management and medication support services. AR 252.

On May 5, 2006, Plaintiff returned to Fresno County Mental Health and claimed that the voices were still there. AR 246.

On June 27, 2006, Dr. J. Luis Bautista reported that Plaintiff had schizophrenia and was referred to mental health for further evaluation and treatment. AR 270.

On September 24, 2006, Frank Wilson, Jr., M.D., completed a consultative psychiatric evaluation. Dr. Wilson interviewed Plaintiff with the assistance of an interpreter. The interpreter reportedly smelled alcohol on his breath. Plaintiff claimed that he hears voices day and night. The onset was more than likely related to heavy drinking, such as one to two, or more, six packs a day. Plaintiff believed that there were three different voices, including the voice of a cop who came to his house when his wife called. He claimed that the voices were telling him in the

---

[2] Plaintiff's claims relate to his mental impairment and therefore only pertinent portions of the medical record will be summarized.

examining room that he was going to have to pay for what he was saying. He stated that he has had delusions that his family is going to kill him. AR 212.

Plaintiff told Dr. Wilson that he went to Fresno County, but it was difficult for him to explain why he no longer goes. Dr. Wilson surmised that the probable scenario was that they told him the problem was his drinking and he is in denial about it being a problem. Plaintiff reported that he stopped drinking for a period of six months, but still heard the voices, so he went back to drinking. He denied other drugs, but had been in two drug treatment programs. AR 213.

Plaintiff said he had been married about 16 years and had two children. He claimed his wife controlled him and she made him live in a little hut he built outside their home. He had been arrested for domestic violence three times. AR 213.

On a typical day, Plaintiff said he will get up early and have a beer. He will talk to friends on the phone. By the evening, he hears voices. He bathes every three days. He cleans the yard and pedals an ice cream cart. He also repairs and sells bikes. AR 213-14.

On mental status examination, Plaintiff had a mild odor of alcohol. He was articulate with a normal thought process. He knew his telephone number and date. He thought the governor and president was Bush. He knew Vicente Fox was the president of Mexico. He became confused when asked to subtract 3 from 20, eventually answering 670. When asked the similarity between beer and wine, he became defensive and stated "I don't drink wine. Wine makes you too drunk." AR 214.

Dr. Wilson diagnosed mild alcohol dementia with delusions, alcohol hallucinations, and continuous alcohol abuse, and assigned a Global Assessment of Functioning ("GAF") of 60. He opined that Plaintiff could maintain attention and concentration and carry out one or two step simple job instructions, but was unable to relate and interact with coworkers, supervisors and the general public on a psychiatric level due to his delusions. Plaintiff also was unable to carry out a complex variety of tasks and would require a copayee if granted benefits. AR 214-15.

On November 28, 2006, G. F. Johnson, a state agency medical consultant, completed a Mental Residual Functional Capacity Assessment form. Dr. Johnson opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, in the ability

to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods.  He also was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  He was moderately limited in the ability to interact appropriately with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors, in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and in the ability to respond appropriately to changes in the work setting.  AR 216-17.

Dr. Johnson indicated that Plaintiff was able to remember and understand simple directions in two hour increments and to sustain concentration, persistence and pace in two hour increments.  He also was able to interact, socialize and adapt appropriately with coworkers and supervisors and to adapt to normal changes in the workplace.  Dr. Johnson concluded that Plaintiff had adequate function to do SRT in an environment with little contact with others.  AR 217-18.

Dr. Johnson also completed a Psychiatric Review Technique form.  He opined that Plaintiff had an organic mental disorder, which is described as psychological or behavioral abnormalities associated with a dysfunction of the brain as evidenced by memory impairment and perceptual or thinking disturbances.  Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  There was insufficient evidence regarding repeated episodes of decompensation.  AR 219-29.

In July 2007, Plaintiff complained to the physician assistant at Bautista Medical Group about hearing voices in his head.  He was assessed with schizophrenia, prescribed Seroquel and referred to Fresno County Mental Health.  AR 263.

On January 8, 2008, Plaintiff underwent another Adult Comprehensive Assessment at Fresno County Mental Health.  He complained that he was hearing a male voice taking command of his body and telling him what he was thinking.  On mental status, Plaintiff had loose associations, was illogical, preoccupied and paranoid.  He was diagnosed with psychotic disorder

nos, alcohol abuse by history and rule out schizoaffective disorder.  He was assigned a GAF of 50.  AR 241-45.

On January 31, 2008, Dr. Altagracia Otero of Fresno County Mental Health saw Plaintiff for medication management.  On mental status exam, Plaintiff was alert with normal cognition, speech, orientation and affective range.  His mood was depressed and his insight and judgment were impaired.  Although his thought processes were organized, he reported voices that were running commentaries on what he was doing or thinking.  Dr. Otero diagnosed psychotic disorder nos, rule out pseudohallucinations, rule out psychosis due to alcohol dependance and rule out schizophrenia (doubt).  AR 238.

On March 10, 2008, Plaintiff again saw Dr. Otero.  On mental status exam, Plaintiff had delusions and hallucinations.  He reported daily auditory hallucinations that comment on what he is doing.  He believed that someone else controlled his thoughts via remote control.  Dr. Otero diagnosed psychosis NOS, rule out pseudohallucinations and rule out psychosis due to alcohol dependence.  He was to increase Seroquel.  AR 237.

On May 5, 2008, Plaintiff reported to Dr. Otero that he had just returned from Mexico.  While there, his brother beat him.  On mental status exam, Plaintiff had persecutory delusions and hallucinations.  He stated that they "they suck the urine out of bathrooms & infuse it back into my home."  AR 234.  Dr. Otero opined that Plaintiff's affective range was restricted and his insight and judgment impaired.  He diagnosed psychotic disorder NOS and alcohol dependence in early partial remission.  AR 234-35.

Between January 31, 2008, and May 5, 2008, Plaintiff was prescribed Seroquel.  AR 236.  On July 1, 2008, Plaintiff complained to Dr. Otero that his Seroquel oversedated him and he took it inconsistently.  He still heard voices and believed that his mind was read by someone using a device.  Dr. Otero discontinued Seroquel and prescribed Abilify.  AR 274.  Abilify was not covered and an alternate antipsychotic was prescribed.  AR 273.

On July 23, 2008, Plaintiff reported to the physician assistant at Dr. Bautista's office that he felt better.  His bipolar was noted to be stable.  AR 278.

On August 4, 2008, Plaintiff saw Dr. Otero and reported a decrease in nighttime voices. He also indicated that the daytime voices make running comments, but are non-command in nature and he is able to distract himself. He no longer experiences a smothering sensation. Plaintiff reported last using alcohol on April 18, 2008. On mental status, his cognition, speech, orientation, mood, affective range, insight and judgment were normal. His thought processes were organized. Plaintiff agreed to try a minimal dose increase of haloperidol to address residual auditory hallucinations. AR 272.

On September 22, 2008, Dr. Bautista and his physician assistant noted that Plaintiff's bipolar was "stable." He had no delusions, anxiety, or hallucinations. AR 276.

ALJ's Findings

The ALJ found that Plaintiff met the insured status requirement through March 31, 2006, and had not engaged in substantial gainful activity since January 1, 2006. Although Plaintiff had the severe impairment of a psychoaffective disorder, the ALJ determined that he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with a nonexertional limitation to simple repetitive tasks. He also could maintain attention, concentration, persistence and pace, relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules. AR 13. With this RFC, the ALJ concluded that Plaintiff could perform his past relevant work. AR 15.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (psychoaffective disorder) based on the requirements in the Regulations (20 CFR §§ 404.1520(b), 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) can perform his past relevant work. AR 12-15.

Here, Plaintiff argues that the ALJ erred (1) in evaluating the state agency physician's opinion; (2) in evaluating his ability to maintain concentration, persistence and pace; (3) in

presenting an incomplete hypothetical to the vocational expert; and (4) in evaluating his ability to interact with others.

**DISCUSSION**

A.  Opinion of State Agency Physician

Plaintiff contends that the ALJ failed to provide reasons for rejecting the opinion of the state agency physician, Dr. Johnson.  Evidence from state agency physicians must be treated as "expert opinion evidence."  Social Security Ruling ("SSR") 96-6p.  An ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions."  *Id*.

Here, the ALJ did not ignore Dr. Johnson's opinion.  As Plaintiff admits, the ALJ gave greater weight to the opinion of the state agency doctors, with the exception of their opinion that Plaintiff should have little contact with others.  AR 14.  Rather, Plaintiff takes issue with the ALJ's apparent disregard for Dr. Johnson's opinion that Plaintiff has an "inability" to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Opening Brief, p. 4.

As a practical matter, an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  *Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989).  In this instance, however, Plaintiff misstates Dr. Johnson's opinion.  Dr. Johnson did not opine that Plaintiff had an *inability* to complete a normal workday and workweek or to perform at a consistent pace.  More precisely, he opined that Plaintiff had moderate limitations in these areas.  AR 217.  Dr. Johnson further opined that Plaintiff was able to sustain concentration, persistence and pace in two hour increments.  AR 217.  Contrary to Plaintiff's assertion, this opinion does not undermine the ALJ's conclusion that Plaintiff had the ability to maintain attention, concentration, persistence and pace.  AR 13.

B.  RFC Finding Regarding Concentration, Persistence and Pace

Plaintiff also appears to challenge the ALJ's finding regarding his ability to maintain attention, concentration, persistence and pace by questioning the ALJ's impartiality.  Plaintiff asserts that the ALJ went to the "extreme" to support the conclusion that Plaintiff could sustain

1  concentration and persistence.  In particular, Plaintiff faults the ALJ for his observation that

2  Plaintiff was able to concentrate "during the hearing which lasted almost 2 hours," because the

3  hearing lasted approximately one hour and eight minutes.  Opening Brief, p. 7; AR 15.

4  The Commissioner does not dispute that the ALJ misstated the duration of the hearing.

5  However, the Commissioner argues that such error does not demonstrate bias.  The Court agrees.

6  ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased.

7  *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  "This presumption can be rebutted by a

8  showing of conflict of interest or some other specific reason for disqualification." *Id*. The burden

9  of making such a showing rests with the party asserting bias.  *Id*. at 196.  Aside from the

10  misstatement regarding the length of the hearing, Plaintiff has failed to present any evidence

11  demonstrating a conflict of interest or other specific reason that the ALJ was biased.  The time

12  misstatement is not so extreme as to indicate an inability to render fair judgment in this case.  *See*

13  *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (a claimant can overcome the

14  presumption against bias by showing that "the ALJ's behavior, in the context of the whole case,

15  was so extreme as to display clear inability to render fair judgment.").  Plaintiff has pointed to

16  nothing else in the record that rises to the level of an inability to render fair judgment.

17  Plaintiff further argues that the ALJ's finding that he flew to Mexico and engaged in other

18  activities of daily living does not support an ability to sustain concentration and persistence

19  absent a specific finding of how such activities are transferable to a work setting.  If a claimant is

20  able to spend a substantial part of his day engaged in pursuits involving the performance of

21  physical functions that are transferable to a work setting, a specific finding as to this fact may be

22  sufficient to discredit a claimant's allegations.  *Morgan v. Commissioner of Social Sec. Admin.,*

23  *169 F.3d 595, 600 (9th Cir. 1999)*.  Plaintiff relies on *Orn v. Astrue,* 495 F.3d 625 (9th Cir.

24  2007), to support his argument that the ALJ must also make a specific finding regarding

25  transferability of those activities to a work setting.  *Id*. at 639.  In *Orn*, the Ninth Circuit found

26  that reading, watching television, and coloring in coloring books were "so undemanding that they

27  cannot be said to bear a meaningful relationship to the activities of the workplace." *Id.*

28

1    Unlike *Orn*, the activities cited here provide evidence that claimant engages in daily
2 activities involving skills that could be transferred to the workplace. <u>Burch v. Barnhart</u>, 400
3 <u>F.3d 676, 681 (9th Cir. 2005)</u> (adverse credibility finding based on activities may be proper "if a
4 claimant engages in numerous daily activities involving skills that could be transferred to the
5 workplace"). Specifically, the ALJ cited Plaintiff's ability to fly to Mexico alone to see his
6 brother about a personal business matter. The ALJ also cited Plaintiff's own testimony that he
7 runs errands for his wife and pays bills, he takes a bus or bicycle to get where he needs to go, and
8 he cooks, shops and does yard work. AR 15. These activities bear a relationship to Plaintiff's
9 ability to concentrate, as well his persistence and pace.
10   Based on the above, the ALJ's determination is supported by substantial evidence and
11 free of legal error.
12 C.   Testimony of Vocational Expert
13   Plaintiff further argues that his inability to complete a normal workday and workweek
14 without interruptions from psychologically based symptoms and to perform at a consistent pace
15 without an unreasonable number and length of rest periods should have been presented to the
16 Vocational Expert.
17   "Hypothetical questions posed to the vocational expert must set out *all* the limitations and
18 restrictions of the particular claimant . . . ." <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir.1988)
19 (emphasis in original). The testimony of a VE "is valuable only to the extent that it is supported
20 by medical evidence." <u>Sample v. Schweiker</u>, 694 F.2d 639, 644 (9th Cir. 1982). The VE's
21 opinion about a claimant's residual functional capacity has no evidentiary value if the
22 assumptions in the hypothetical are not supported by the record. <u>Embrey</u>, 849 F.2d at 422.
23   Plaintiff's argument regarding the hypothetical posed to the VE lacks merit. First,
24 Plaintiff overstates the limitation identified by the state agency physician. As previously
25 discussed, the state agency physician did not opine that Plaintiff was completely precluded from
26 completing a normal workday and workweek or performing at a consistent pace. AR 217.
27   Second, an ALJ is only required to present the VE with those limitations he finds to be
28 credible and supported by the evidence. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165-66 (9th Cir.

14

2001). In this instance, the ALJ credited the state agency determination that Plaintiff could perform simple, repetitive tasks, could sustain concentration, persistence and pace in two hour increments, could interact, socialize and adapt appropriately with co workers and supervisors and could adapt to normal change in the workplace. AR 13, 217-18. The ALJ presented these limitations to the VE in the first hypothetical, asking him to assume an individual who retained the ability to perform simple repetitive tasks, the ability to maintain attention, concentration, persistence, and pace, the ability to relate to and interact with others, to adapt to usual changes in work setting and to adhere to safety rules. The VE testified that with these limitations, the individual could perform Plaintiff's past relevant work as a yard worker as defined in the Dictionary of Occupational Titles. AR 43-44.

Third, and finally, Plaintiff's counsel was able to present hypotheticals to the VE. In response to questioning from Plaintiff's counsel, the VE testified that a claimant with moderate difficulties in maintaining concentration, persistence or pace and moderate difficulties maintaining social functioning could perform Plaintiff's past relevant work. AR 50-51.

For these reasons, the Court finds that the ALJ did not err in his hypothetical to the VE.

D.      Evaluation of Plaintiff's Ability to Interact With Others

Plaintiff argues that the ALJ improperly rejected the state agency physician opinion that he should have little contact with others. To support this argument, Plaintiff appears to suggest that the ALJ erred by rejecting the opinion of the consultative examiner in favor of the state agency physician.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir.1984). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir.1995).

1  Here, the ALJ rejected the consultative examiner's opinion that Plaintiff was "unable to
2  relate and interact with coworkers, supervisors and the general public on a psychiatric level due
3  to his delusions." AR 14, 215, 217.  The ALJ gave greater weight to the opinion of the state
4  agency physicians, who opined that Plaintiff had the ability to interact, socialize and adapt
5  appropriately with co workers and supervisors.  In so doing, the ALJ also rejected the portion of
6  the state agency's opinion that Plaintiff should have "little contact with others." AR 14.  The
7  ALJ found no indication in the record that Plaintiff had difficulty interacting with others and
8  primarily relied on Plaintiff's testimony that he has no problems getting along with others.  AR
9  14.

10  The opinion of a nonexamining physician may serve as substantial evidence when it is
11  consistent with other independent evidence in the record. *See* Lester v. Chater, 81 F.3d 821,
12  830-31 (9th Cir. 1995); *see also* Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor
13  need not be discounted and may serve as substantial evidence when they are supported by other
14  evidence in the record and are consistent with it"); Magallanes, 881 F.2d at 752 ("the ALJ did
15  not rely on [the nonexamining physician's] testimony *alone* to reject the opinions of [the
16  claimant's] treating physicians ....") (emphasis in original); *but see* Pitzer, 908 F.2d at 506 n. 4
17  (the opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that
18  justifies that rejection of a treating physician).

19  In this instance, the ALJ's reliance on Plaintiff's testimony is not wholly conclusive of
20  whether Plaintiff has difficulty getting along with others.  According to the record, the ALJ asked
21  the Plaintiff if he had any problems getting along with other people, to which Plaintiff replied,
22  "No, I have no enemies."  AR 29.  It is not entirely clear from Plaintiff's response that he has no
23  problem getting along with others.  His additional statement regarding a lack of enemies does not
24  mean he gets along with others.  Further, the ALJ incorrectly concluded that the consultative
25  examiner's opinion was consistent with the view that Plaintiff had no difficulty interacting with
26  others.  AR 14.  Instead, the consultative examiner opined that Plaintiff was unable to relate and
27  to interact with the general public on a psychiatric level due to his delusions.  Despite this, the
28  Court finds that even if the ALJ should have adopted a limitation on public contact, his failure to

16

do so was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).  In response to questions from Plaintiff's counsel, the VE testified that even if, as Plaintiff suggests, he was unable to relate and interact with the general public, he could perform his past relevant work as a yard worker.  AR 47.  This is consistent with the ALJ's ultimate conclusion that Plaintiff could perform his past relevant work as a yard worker.

Further, the state agency physician opinion is not contradicted by all other evidence in the record. *Gallant*, 753 F.2d at 1454, *quoting Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir.1984) ( "'[a] report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'").  Here, the ALJ noted that the medical record showed no indication that Plaintiff had difficulty interacting with others and his treating physicians did not provide any mental limitations.  AR 14.  Plaintiff has not challenged these findings by the ALJ with any specificity.  Plaintiff also has not challenged the finding that his medical records showed his mental condition improved over time, the voices became less frequent and less severe and his condition was deemed stable.  AR 14-15, 276, 278; *Cf. Stone v. Heckler*, 761 F.2d 530,532 (9th Cir. 1985) (noting the most recent medical report is the most probative).

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Leopoldo Macias.

This Findings and Recommendation will be submitted to the Honorable Oliver W. Wanger pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with this Findings and Recommendation, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    **Dated:**   **September 13, 2010**                **/s/ Dennis L. Beck**
                                                              UNITED STATES MAGISTRATE JUDGE